UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| CHARLES J. HATCHER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No.: 3:23-CV-407-CLC-JEM |
| AUSTIN LAMIMAN and FNU EVANS, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Defendants John Evans and Austin Lamiman (collectively "Defendants") filed a motion for summary judgment[1] on this Plaintiff's pro se prisoner's complaint under 42 U.S.C. § 1983, alleging that Plaintiff failed to properly exhaust the Tennessee Department of Correction ("TDOC") grievance process prior to filing suit [Doc. 16].[2] Plaintiff has filed responses opposing the motion [Docs. 20, 28], and Defendants filed a reply to Plaintiff's arguments [Doc. 22] and a statement of material facts [Doc. 29]. Plaintiff has filed a response to Defendants' statement of material facts. [Doc. 32.] Having fully considered the parties' arguments, the competent evidence, and the applicable law, the Court finds that Defendants' motion [Doc. 16] should be **GRANTED**.

I. PLAINTIFF'S ALLEGATIONS AND PROCEDURAL BACKGROUND

On November 10, 2022, Plaintiff, a TDOC inmate housed at the Morgan County Correctional Complex ("MCCX"), entered the High Security building to begin his food-service job [Doc. 1 at 15]. Defendant Evans ordered Plaintiff and the other inmate workers taken to the

---

[1] Defendants filed a motion to dismiss that this Court converted to a motion for summary judgment in accordance with Rule 12(d) [*See* Doc. 25].

[2] Defendants also initially argued that the complaint was untimely but have since conceded it was timely filed [*Compare* Doc. 17 at 11–12 *with* Doc. 22 at 1 n.2].

recreation area and strip searched by Defendant Corporal Lamiman and Officer Despain [*Id.*]. As Plaintiff removed his shirt, handed his identification to Officer Despain, and "turned to say something to the officer," Defendant Lamiman punched Plaintiff in the jaw [*Id.*]. Plaintiff fell to the ground, and Defendant Lamiman struck Plaintiff in the jaw again [*Id.*]. As Plaintiff screamed and asked Defendant Lamiman why he hit him, Officer Despain pulled Defendant Lamiman off Plaintiff [*Id.*].

Plaintiff, who was bleeding profusely, told the officers he needed medical treatment and was badly hurt [*Id.*]. Defendant Lamiman asked Plaintiff what he was going to tell medical and moved aggressively back toward Plaintiff when Plaintiff did not answer [*Id.*]. Frightened, and because Plaintiff had previously been beaten by officers at MCCX, Plaintiff responded, "I fell man, I fell" [*Id.* at 15–16].

While Plaintiff was still lying on the floor covered in blood, Defendant FNU Sergeant Evans came into the area [*Id.* at 16]. Defendant Evans saw the blood "all over the floor" and ordered Defendant Lamiman and Officer Despain to get Plaintiff "cleaned up" and to lock him up [*Id.*]. After Plaintiff put on clothes, the officers handcuffed Plaintiff and told him to "keep [his] f**kin' head down" [*Id.*]. When Plaintiff noticed the officers were taking him to "the hole[,]" he again stated that he needed medical treatment [*Id.*]. The officers ignored Plaintiff and placed him in a cell in "the hole" [*Id.* at 15–16]. In that cell, Plaintiff requested medical help from the unit officers, but those officers told Plaintiff he "would have to wait for the nurse the next morning and that medical knew about [his] condition" [*Id.* at 16–17].

At around 6 a.m. the next morning, Plaintiff got the attention of a nurse who entered the unit [*Id.* at 17]. When the nurse saw Plaintiff's injuries, she "gasped and told the Corporal that was with her that [Plaintiff] needed to get to medical immediately" [*Id.*]. Plaintiff dressed and was

2

Case 3:23-cv-00407-CLC-JEM   Document 34   Filed 07/03/24   Page 2 of 8   PageID #: 221

taken to the medical department, where he was examined, and x-rays were taken of his jaws [*Id.*]. Plaintiff was then advised that he would be transported to an outside hospital for immediate surgery, as Defendant Lamiman had broken Plaintiff's right jaw and fractured Plaintiff's left jaw [*Id.* at 17–18].

Plaintiff was transported to the University of Tennessee Medical Center in Knoxville [*Id.* at 17]. The following day, November 12, 2022, a surgeon put two plates, approximately eighteen screws, and a suture wire in Plaintiff's jaw to hold it together [*Id.*]. The doctor told Plaintiff he would never regain feeling in part of his face [*Id.* at 5, 18]. The doctor intended to prescribe Plaintiff pain medication to take at MCCX, but when the transportation officer told him that the prison would not give it to Plaintiff, the doctor did not prescribe any medication for pain management [*Id.* at 18].

Plaintiff was transported back to MCCX on November 13, 2022, where he remained in a medical cell for four weeks with only over-the-counter pain medication [*Id.*]. While Plaintiff was in a medical cell, MCCX's Internal Affairs took Plaintiff's statement and advised him that Defendant Lamiman "had been given the option to quit or be fired and he had chosen to quit" [*Id.*]. After he was released from the medical cell, Plaintiff was housed in the Security Management Unit for four weeks until he was transported to the Northeast Correctional Complex, where he is now housed [*Id.*].

Plaintiff subsequently filed the instant action, and in his complaint he conceded that MCCX had a grievance procedure that he did not pursue [Doc. 1 at 6–7]. Specifically, Plaintiff alleges that he did not file a grievance because he "was hospitalized and unable to access the grievance process partly during the 7 days the process [sic] available to him. When he attempted to avail himself of the process[,] he was told he was beyond the time limit to file" [*Id*. at 8].

3

## II. LEGAL STANDARD

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To establish an entitlement to summary judgment, the moving party must demonstrate that the nonmoving party cannot establish an essential element of his case for which he bears the ultimate burden of proof at trial. *Celotex*, 477 U.S. at 322. Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate by setting forth specific facts showing there is a genuine issue for trial. *Id.* at 323. That is, to successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 940 (6th Cir. 2010).

## III. LAW & ANALYSIS

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Administrative exhaustion is mandatory, regardless of the type of relief sought, or whether such relief can be granted through the administrative process. *See Ross v. Blake*, 578 U.S. 632, 641 (2016); *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). The procedures for exhausting a grievance "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). And the requirement is one of "proper exhaustion," which requires a plaintiff to complete "the administrative review process in accordance with the

4

applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93.

In some limited circumstances, an inmate is relieved of his duty to exhaust administrative remedies because the remedies are effectively unavailable. *See Ross v. Blake*, 578 U.S. 632, 642 (2016). These circumstances include (1) when there is no possibility for relief through use of the procedure; (2) when the rules are so confusing as to render them essentially unknowable; and (3) when prison officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44.

TDOC has an established grievance procedure that is set forth in Policy 501.01 and explained in the TDOC Inmate Grievance Procedures handbook [Doc. 18 at 1 ¶ 4, 6–13]. Under this procedure, a grievance is a "written complaint concerning the substance or application of a written or unwritten policy or practice, any single behavior or action toward an inmate by staff or other inmates, or any condition or incident within the Department or institution which personally affects the inmate complainant" [*Id*. at 6–7]. Grievance forms are available in each housing unit, are given out upon request, and are collected daily from locked depositories on each unit [*Id*. at 2 ¶ 10]. Inmates housed in segregation or who are medically detained may give their forms to any staff member, and that staff member is required to deposit the grievance in the depository the same day [*Id*. ¶ 11]. Inmates needing assistance to prepare and file grievances may request the assistance of an advocate [*Id*. ¶ 12]. Grievances are logged into the Tennessee Offender Management Information System ("TOMIS") as received by the grievance chairperson, and grievance records are maintained on the TOMIS database [*Id*. at 2 ¶ 5, 3 ¶ 14].

The TDOC grievance review is a three-step process [*Id*. at 3 ¶ 13]. First, an inmate initiates the process by submitting a written grievance form within seven days of the complained-of incident [*Id*.]. The grievance is forwarded to the appropriate employee or department for a

response, and that response is reviewed by the grievance chairperson, who also provides a written response [*Id.*]. If the inmate is dissatisfied with that response, he may proceed to step two and appeal the response to the grievance committee and warden [*Id.*]. The grievance committee will then issue a proposed response, which is forwarded to the warden, who reviews the committee's response and issues a response of agreement or disagreement [*Id.*]. If the inmate is dissatisfied with the step two response, he may proceed to step three and appeal to the Assistant Commissioner of Operations [*Id.*]. The step-three response must be returned to the grievance chairperson within twenty-five working days of the date the appeal was received [*Id.*]. This response is final and no longer subject to additional appeals [*Id.*].

If a time limit expires at any stage of the grievance process without the required response from prison officials, the inmate may move the grievance to the next stage of the process, unless the inmate agrees in writing to an extension of the applicable time period [*Id.*]. Additionally, if the grievance is deemed inappropriate, an abuse of the procedure, or non-grievable, the inmate may appeal that decision [*Id.* at 9]

Plaintiff has not filed a grievance since November 2008 [*Id.* at 3 ¶ 16, 41]. Plaintiff concedes that he did utilize the grievance procedure to grieve the claims in his complaint but states that he was not able to access the grievance process within the seven-day time limit, as he was recovering from surgery and suffering the pain of that surgery without proper pain medication [Doc. 21 at 5; *see also* Doc. 1 at 8]. That is, Plaintiff argues that the remedies he failed to exhaust were not "available" to him because MCCX staff engaged in "intentional actions [that] thwarted his attempts to exhaust his administrative remedies" [Doc. 28 at 1]. But Plaintiff has not alleged any facts to support this allegation. And he has not alleged circumstances that would have otherwise rendered the administrative grievance process unavailable to him, as he does not argue

6

that he did not understand the process or that prison officials were unwilling to provide him with relief. *Id*. at 643–44.

Instead, it is undisputed that Plaintiff had access to the grievance procedure upon his return from the hospital while he was in a medical cell, from November 13 to November 17 [Doc. 1 at 9–13]. It is also undisputed that inmates who are medically detained are instructed by TDOC policy to give their completed grievance forms to staff members, who must deposit them the same day [Doc. 18 ¶ 11, 27]. And during this time period, despite his pain, Plaintiff provided a statement to MCCX Internal Affairs and informed medical staff that he needed treatment [Doc. 1 at 8, 18].

Thus, Plaintiff has not presented any evidence, much less "significant probative evidence[,]" to rebut Defendants' evidence that Plaintiff had available administrative remedies that he failed to pursue. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986) (citation omitted). And the Court of Appeals for the Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier v. Laurel Cnty., Ky*., 636 F.3d 218, 224 (6th Cir. 2011) (citation omitted); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."). Therefore, the Court finds that there is no genuine dispute that Plaintiff did not attempt to utilize the grievance process prior to filing suit, and Defendants are entitled to the dismissal of this action under 42 U.S.C. § 1997e(a).

### IV. CONCLUSION

Defendants have met their burden of showing they would prevail at trial on the exhaustion issue. Accordingly, Defendants' motion for summary judgment [Doc. 16] will be **GRANTED**, and this action will be **DISMISSED without prejudice**.

Finally, the Court **CERTIFIES** that any appeal from this decision would not be taken in good faith, and Plaintiff is **DENIED** leave to proceed *in forma pauperis* should he choose to appeal. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER**.

**SO ORDERED.**

**ENTER:**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**